Filed 3/26/15  P. v. Mitchell CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ANTHONY WUNYA MITCHELL,<br><br>　　　　Defendant and Appellant. | B254025<br>(Los Angeles County<br>Super. Ct. No.  GA085599) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dorothy L. Shubin, Judge.  Affirmed, with directions.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, appellant Anthony Wunya Mitchell was convicted of attempted murder and assault with a firearm. He maintains that the prosecution engaged in racial discrimination in exercising a peremptory challenge to a prospective African-American juror. We reject appellant's contention, but conclude that the abstract of judgment inaccurately reflects his sentence. We therefore direct the trial court to correct the abstract of judgment, and otherwise affirm the judgment.

**RELEVANT PROCEDURAL BACKGROUND**

On October 15, 2013, an amended information was filed, charging appellant in count 1 with the attempted murder of Trevelle Thompson (Pen. Code, §§ 187, subd. (a), 664), and in count 2 with assault with a firearm on Thompson (Pen. Code, § 245, subd. (a)(2)).[1] Accompanying the counts were gun use allegations (§§ 12022.5, subd. (a), 12022.53, subds. (b) - (d)) and gang allegations (§ 186.22, subd. (b)(1)(C)); in addition, in connection with count 2, the information alleged that appellant personally inflicted great bodily injury on Thompson (§ 12022.7, subd. (a)). Appellant pleaded not guilty and denied the special allegations.

A jury found appellant guilty as charged, and found the special allegations to be true, with the exception of the allegations that appellant personally discharged a handgun and inflicted great bodily injury (§§12022.53, subds. (c), (d), 12022.7, subd. (a)). The trial court sentenced appellant to a total term of 15 years to life plus 10 years.

---

[1] All further statutory citations are to the Penal Code.

## FACTS[2]

Appellant is a member of the Pasadena Denver Lanes Bloods (PDLB) gang, which has long been at war with the 5 Deuce Squiggly Lane Gangster Bloods gang (Squiggly Lane Gangsters). Trevelle Thompson belonged to the latter gang. According to Pasadena Police Officer Carlo Montiglio, a gang expert, gangs often retaliate against members of rival gang who encroach on their territory. At the time of the events in question, the PDLB gang claimed territory encompassing the intersection of Fair Oaks Boulevard and Penn Street in Pasadena.

On December 13, 2011, shortly after 11:00 a.m., Thompson was visiting his girlfriend Gina Davis, who lived in an apartment on Fair Oaks Boulevard close to Penn Street.[3] Appellant appeared at Davis's door and asked her, "Is the light-skinned guy here that I saw here yesterday?" When Davis replied, "I don't know who you're talking about," appellant walked away from her apartment door.

Moments later, Thompson left Davis's apartment. As he walked out of Davis's building, he heard three or four gun shots, and a bullet hit him in the face. Olivia Medina saw appellant shooting a gun, and Neal Stanley saw him running from the scene of the shooting.[4] In addition, Mark Paquet observed a man resembling appellant walking quickly away from the scene.

---

[2] As appellant's sole contention of error is one which, if established, would require reversal of the judgment without an assessment of prejudice (*People v. Long* (2010) 189 Cal.App.4th 826, 843), we provide only an abbreviated summary of the evidence presented at trial.

[3] Because Thompson was unavailable as a witness, excerpts from his preliminary hearing testimony were admitted at trial.

[4] At trial, Medina testified that she was unable to identify the shooter, but acknowledged that she previously had identified appellant as the shooter in a photographic lineup and at the preliminary hearing.

After the shooting, Thompson ran to a nearby tire shop and asked for help.[5] He was taken to a hospital, where surgery was performed on his face. The gunshot to his face caused multiple fractures to his right eye socket bone and right cheek bone.

Following appellant's arrest, he was interviewed by Pasadena Police Department detectives. Appellant stated that a gang member named "Denver Ed" had instructed him to knock on Davis's door, and that Denver Ed later shot at Thompson. Appellant denied any awareness of Denver Ed's plan to shoot Thompson. When shown a photographic six pack, appellant identified Denver Ed as Eddie McFadden, Jr., a member of the PDLB gang.

## DISCUSSION

### A. *Error in Jury Selection*

Relying on *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), rejected on another ground in *Johnson v. California* (2005) 545 U.S. 162, appellant contends his convictions must be reversed, because the trial court erred in concluding that the prosecutor's stated reasons for exercising a peremptory challenge to a prospective African-American female juror were nondiscriminatory. For the reasons set forth below, we disagree.

#### 1. *Governing Principles*

A prosecutor's use of peremptory challenges to excuse prospective jurors on the basis of race denies the defendant his or her rights to a representative jury under the California Constitution (art. I, § 16) and equal protection under the

---

[5]     Although Thompson denied that he was armed, evidence was presented that he disposed of a gun while fleeing toward the tire shop.

Fourteenth Amendment of the United States Constitution. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 101.) "'In ruling on a motion challenging the exercise of peremptory strikes, the trial court follows a three-step procedure. "First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citation.] Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." [Citation.]' [Citation.]'" (*Ibid.*, quoting *People v. Clark* (2011) 52 Cal.4th 856, 904.)

### 2. *Underlying Proceedings*

During voir dire, prospective Jurors No. 24 and No. 25 were examined contemporaneously. Juror No. 24 stated that he lived in Pasadena, was married, had no children, and worked as a delivery driver for a cabinetry business. His wife worked in building services at a school. He had no prior jury experience, but knew "a few" lawyers, including one who was practicing.

Juror No. 25 stated that she lived in Burbank, was a student studying psychology and criminal justice, and worked in a hospital pathology laboratory. She was unmarried and childless, but lived with her boyfriend, a sergeant in the United States Army military police. She had served on a jury in a civil trial.

When the prosecutor asked whether Jurors No. 24 and No. 25 had heard of the PDLB gang or the Squiggly Lane Gangsters, only Juror No. 24 replied in the affirmative. The following exchange occurred:

"[Prosecutor]: How do you know about those gangs?

"… Juror No. 24: Being from this area, just it's a -- I've heard it before.

5

"[Prosecutor]: Any particularly bad experiences, good experiences, any experiences with any member of those?

"… Juror No. 24: No. Just hearsay, hearing things that happened.

"[Prosecutor]: Feel like you could be a fair juror? Knowing what you've heard so far . . . .

"… Juror No. 24: Sure. Yeah."

Later, prospective Juror No. 40, who appears to have been the sole African-American in the 55-person venire, was subjected to voir dire. She stated that she lived in Pasadena, worked as an escrow assistant, and was unmarried and childless. She had no prior jury experience, and no family or friends "in the legal field."

While inquiring whether the newly-seated prospective jurors had any contact with gangs, the prosecutor engaged in the following exchange with Juror No. 40:

"[Prosecutor]: . . . [Y]ou're from Pasadena?

"… Juror No. 40: Yes.

"[Prosecutor]: What area of Pasadena?

"… Juror No. 40: I live on --

"[Prosecutor]: Well, you don't need to tell us the street. But just north, west?

"… Juror No. 40: North.

"[Prosecutor]: North. Okay. You've heard of the Pasadena Denver Lane Bloods?

"… Juror No. 40: Yes.

"[Prosecutor]: Have you had any contact with Pasadena Denver Lane Bloods?

"… Juror No. 40: No.

"[Prosecutor]: How do you know about them?

"… Juror No. 40: Just reading the paper or just hearsay.

6

"[Prosecutor]: Okay. Hearsay, meaning what? What did you hear?

"… Juror No. 40: People in general talking, whether at work, school, church. Just people talking about it in general. 'Did you read today's paper? Did you read about this?'

"[Prosecutor]: Okay. . . . Any positive/negative feelings about that ?

"… Juror No. 40: No. It's just, like I said, just a lot of hearsay."

When the prosecutor exercised a peremptory challenge to Juror No. 40, defense counsel raised an objection under *Wheeler*, contending that the prosecutor had exercised the challenge because Juror No. 40 was an African-American female. After finding a prima facie showing of discrimination, the trial court asked the prosecutor to explain his peremptory challenge. The prosecutor stated: "It was the totality of the circumstances of being single, occupation, very limited life experiences, no jury, no children. [¶] In addition, what struck me about her is that she lives in . . . the north part of … Pasadena where [the PDLB gang] congregates and her limited knowledge of hearsay. I don't know that I found it particularly credible that she said her knowledge … of [the PDLB gang] was hearsay given the location where she lives. [¶] In any event, the totality of the circumstances, the life experiences. Contrast that [with] Juror [No.] 25, who is single and a student does not have life experiences[,] but does have experience on a jury and was a bit more clear in her answers than Juror No. 40."

Defense counsel argued that although the prosecutor had ample opportunity to question Juror No. 40 regarding her life experiences, he inquired only regarding her knowledge of the PDLB gang, and never probed her answers. Defense counsel stated: "[Those answers] seemed to satisfy [the prosecutor] for the time being. If there were concerns, then I would imagine there would have been more questions." The prosecutor replied, "I did follow up, and she said it was all hearsay."

7

The trial court denied the *Wheeler* motion, stating:  "I'm granting the [peremptory] challenge.  Quite frankly, I had the same question in my mind when [Juror No. 40] said she heard of [the PDLB gang] but . . . was vague about it.  I mean, I can understand that concern.  I think there's a race-neutral explanation given as to that juror."

3. *Analysis*

Because the parties do not dispute that a prima facie showing of discrimination was made, we examine the adequacy of the prosecutor's explanation for the peremptory challenge to Juror No. 40.  (*People v. Lomax* (2010) 49 Cal.4th 530, 570.)  "'A prosecutor asked to explain his conduct must provide a "'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." [Citation.]  "The justification need not support a challenge for *cause,* and even a "trivial" reason, if genuine and neutral, will suffice." [Citation.]  A prospective juror may be excused based upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons.' [Citation.]  '[B]ut race-based decisions are not constitutionally tolerable.' [Citations]."  (*DeHoyos*, *supra*, 57 Cal.4th at p. 102.)

For the trial court, the key issue is "'whether [it] finds the prosecutor's race-neutral explanations to be credible.  Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.' [Citation.]  In assessing credibility, the court draws upon its contemporaneous observations of the voir dire.  It may also rely on the court's own experiences as a lawyer and bench officer in the community . . . .  [Citation.]'"  (*DeHoyos*, *supra*, 57 Cal.4th at p. 102, quoting *People v. Lenix* (2008) 44 Cal.4th 602, 613 (*Lenix*).)

8

Our inquiry into the trial court's ruling "is deferential, examining only whether substantial evidence supports its conclusions. [Citation.] 'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges "'with great restraint.'" [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal. [Citation.]" (*Lenix*, *supra*, 44 Cal.4th at pp. 613-614, quoting *People v. Burgener* (2003) 29 Cal.4th 833, 864.)

We discern no error in the trial court's ruling. A potential juror's lack of life experiences can support a peremptory challenge (see *People v. Sims* (1993) 5 Cal.4th 405, 429-430 [27-year old potential juror's age and lack of experience were neutral reasons for peremptory challenge]; *People v. Lomax*, *supra*, 49 Cal.4th at p. 575 [in death penalty case, prosecutor could properly seek older, more conservative jurors in exercising peremptory challenges]), as can the prosecutor's concerns regarding the potential juror's gang contacts (*People v. Cox* (2010) 187 Cal.App.4th 337, 359-360). In explaining "the totality of circumstances" that supported the peremptory challenge to Juror No. 40, the prosecutor pointed to her status as a single and childless person, her limited life experiences, and lack of prior jury service. In addition, the prosecutor noted that Juror No. 40 gave vague answers to questions regarding her knowledge of the PDLB gang, although she lived within its claimed area in Pasadena. The trial court -- which viewed Juror No. 40's demeanor -- stated that it had shared the prosecutor's concern regarding Juror No. 40's responses to the questions regarding her gang knowledge.

Appellant contends that a comparative juror analysis of the prosecutor's peremptory challenges establishes that he impermissibly discharged Juror No. 40.

9

Generally, comparative juror analysis, which involves "side-by-side comparisons of . . . black venire panelists who were struck and white panelists allowed to serve" (*Miller-El v. Dretke* (2005) 545 U.S. 231, 241), constitutes "'one form of circumstantial evidence that is relevant, but not necessarily dispositive, on the issue of intentional discrimination.'" (*Lenix*, *supra*, 44 Cal.4th at p. 622.) Noting that Juror No. 40 was apparently the sole African-American prospective juror, appellant maintains that "[t]he prosecutor's stated reasons for discharging [Juror No.] 40 applied equally to [Juror No.] 24, who . . . was not discharged." Appellant places special emphasis on the fact that both jurors lived in Pasadena and identified "hearsay" as the source of their knowledge of PDLB gang. For the reasons discussed below, we reject his contention.

Initially, we note that in asserting the *Wheeler* motion regarding the prosecutor's peremptory challenge to Juror No. 40, defense counsel never mentioned Juror No. 24 or suggested that he was in any way similar to Juror No. 40. Even after the prosecutor explained the challenge by comparing seemingly similar Juror Nos. 25 and 40, defense counsel did not mention Juror No. 24. While a comparative analysis must be considered on appeal when a defendant relies on that evidence and the record is adequate to permit the comparisons (*People v. Williams* (2013) 56 Cal.4th 630, 662 (*Williams*)), any such analysis is confined to the prospective jurors identified by the defendant, and is subject to other restrictions. (*Lenix*, *supra*, 44 Cal.4th at pp. 622-624.) "Defendants who wait until appeal to argue comparative … analysis must be mindful that such evidence will be considered in view of the deference accorded the trial court's ultimate finding of no discriminatory intent." (*Id.* at p. 624.) Furthermore, comparative analysis "on a cold appellate record has inherent limitations." (*Id*. at p. 622.) Missing from the record are the "'body language'" and facial demeanor of the prospective jurors, which may convey to the trial court and counsel significant differences in answers

that appear similar in the reporter's transcript.**6** (*Williams*, *supra*, 56 Cal.4th at p. 662.) Moreover, "the prosecutor generally has not provided, and was not asked to provide, an explanation for nonchallenges." (*People v. Jones* (2011) 51 Cal.4th 346, 365-366.) Thus, "[w]hen asked to engage in comparative juror analysis for the first time on appeal, a reviewing court . . . must not turn a blind eye to reasons the record discloses for not challenging other jurors even if those other jurors are similar in some respects to excused jurors." (*Ibid.*)

In selecting the jury and three alternate jurors from the 55-person venire, the prosecutor exercised nine peremptory challenges, including the challenge to Juror No. 40. Because discharging the only prospective African-American juror in a group of potential jurors is ordinarily insufficient, by itself, to establish intentional discrimination (*People v. Hamilton* (2009) 45 Cal.4th 863, 898-899), our focus is on the comparison between Juror Nos. 24 and 40. That comparison is probative only if the nondischarged juror was "materially similar in the respects significant to the prosecutor's stated basis for the challenge" to the discharged juror. (*DeHoyos*, *supra*, 57 Cal.4th at p. 107.) Here, the prosecutor stated that a "totality of circumstances" underlay the peremptory challenge to Juror No. 40, including her lack of experience, unmarried status, and vague responses regarding her knowledge of the PDLB gang.

The limited record discloses material dissimilarities between Juror Nos. 24 and 40. One reason given by the prosecutor for discharging Juror No. 40 was her

---

**6** As our Supreme Court has explained: "'On appellate review, a voir dire answer sits on a page of transcript. In the trial court, however, advocates and trial judges watch and listen as the answer is delivered. Myriad subtle nuances may shape it, including attitude, attention, interest, body language, facial expression and eye contact.' [Citation.] 'A transcript will show that the panelists gave similar answers; it cannot convey the different ways in which those answers were given. Yet those differences may legitimately impact the prosecutor's decision to strike or retain the prospective juror.' [Citation.]" (*Williams*, *supra*, 56 Cal.4th at p. 662, quoting *Lenix*, *supra*, 44 Cal.4th at pp. 622-623.)

limited life experiences. Juror No. 24 manifested more life experience than Juror No. 40, even though both were childless and lacked prior jury experience, as Juror No. 24 was married and knew some attorneys.

We further observe that the prosecutor expressly distinguished Juror No. 40 from Juror No. 25 who, though single and a student, had previously served on a jury. As noted, defense counsel never suggested that any other juror -- including Juror No. 24 -- had similarly limited life experiences, and the record does not reflect the ages of either Juror No. 40 or Juror No. 24. As the record is silent regarding those matters, we will not infer they were the same age, or that the prosecutor was being less than candid in concluding that Juror No. 40 had comparatively less life experience than other non-challenged jurors.

The trial court also found that Juror No. 40's responses regarding her knowledge of the PDLB gang raised a concern regarding her candor. As noted above, the prosecutor identified a credible basis for that concern, and the trial judge, who observed Juror No. 40, agreed with the prosecutor. In contrast, nothing before us suggests that Juror No. 24's responses and demeanor raised a similar concern that was disregarded by the prosecutor. Appellant's contention thus fails on the limited record before us. In sum, the trial court properly denied appellant's *Wheeler* motion.


B. *Abstract Of Judgment*

Respondent contends the abstract of judgment must be corrected to reflect the sentence that the trial court imposed. We agree. On count 1 (attempted willful, deliberate, and premeditated murder), the court imposed a life sentence with a minimum parole eligibility period of 15 years (§ 186.22, subd. (b)(5)), plus a 10-year gun use enhancement (§ 12022.53, subd. (b)). On count 2 (assault with a firearm), the court imposed and stayed (§ 654) a total term of 15 years, comprising

12

the 2-year lower term, a 3-year gun enhancement (§ 12022.5) and a 10-year gang enhancement (§ 186.22, subd. (b)(2)(C)).  The abstract of judgment nonetheless mistakenly states that a term of 10 years to life was imposed on count 1, that a total term of 5 years was imposed on count 2, and that only the gang enhancement relating to count 2 was stayed (§ 186.22, subd. (b)(1)(C)).

**DISPOSITION**

The judgment is affirmed. The trial court is directed to amend the abstract of judgment to correct the errors identified above (see Discussion, pt. B, *ante*), and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.